# THE PEOPLE OF THE STATE OF NEW YORK ex rel. HERMAN R. BOLTZER, Plaintiff, v. GEORGE H. DALEY and Others, Trustees of the Village of Edgewater, Defendants.*

*Construction of statutes — repeal of the provision of a special act by a general act — sub. 12 of tit. 9, chap. 674 of 1870, repealed by chap. 270 of 1885 — right of a citizen to compel a public officer to perform his duty.*

Chapter 270 of 1885, providing for the preservation of the public health and the registration of vital statistics, was passed to provide a uniform system for the organization of boards of health throughout the State, and it is applicable to every incorporated village in the State, except those in which boards of health, separate and distinct from the trustees of the village, existed at the time of its passage.

Subdvision 12 of title 9 of chapter 674 of 1870, the charter of the village of Edgewater, empowering the trustees of the village to take such measures as they might deem proper for the prevention or removal of any pestilential or infectious disease, and constituting them the board of health of the village, was repealed by the passage of the said act of 1885, and from and after that time it became the duty of the said trustees to appoint a board of health for the village as thereby required.

In case the trustees fail to comply with the provisions of the said act any citizen of the village may apply to the court for a *mandamus* to compel the trustees to appoint and organize the board of health as required by the act.

It is the fixed and established rule of this State that every citizen has a right to compel the performance by public officers of the duty imposed upon them of executing the laws of the State, which are enacted for the benefit of the community.

Case agreed upon and submitted to the court for its decision under the authority of section 1279 of the Code of Civil Procedure.

*J. Henry Work,* for the relator.

*Stephen D. Stephens,* for the trustees, etc.

* Decided July 17, 1885.

Daniels, J.:

The application made to the court is for a writ of *mandamus*, directing the defendants, as trustees, to appoint a board of health for the village of Edgewater. It has been resisted by the trustees upon the ground that by subdivision 12 of title 9 of chapter 674 of the Laws of 1870, the trustees were empowered to take such measures as they might deem proper for the prevention or removal of any pestilential or infectious disease, and constituting them the board of health of the village. This provision, it is conceded, was superseded or repealed by chapter 160 of the Laws of 1872, but as chapter 586 of the Laws of 1874 repealed this act of 1872, this subdivision contained in the village charter was again restored by virtue of the effect which the act of 1874 is entitled to as a repealing act. And if the laws since enacted have not divested the trustees of the authority given to them as the board of health of the village, then there is no legal ground upon which the present application should be permitted to succeed. Whether that has been done by the legislation since enacted is, therefore, the controlling point upon which the alleged duty of the defendants must necessarily depend.

By chapter 324 of the Laws of 1850, the common council of every city, and the trustees of every incorporated village, in the State in which there was not then a board of health duly organized, was required once in each year to appoint a board of health for such city or village, to consist of not less than three nor more than seven persons. By chapter 431 of the Laws of 1881, the duty so enjoined was continued, except as to the cities of Brooklyn, New York, Yonkers and Buffalo. Further legislation for the attainment of the same end was enacted by chapter 351 of the Laws of 1882, and minute as well as specific regulations were prescribed to render the board of health entirely efficient and to secure a complete observance of their legal orders and directions. By chapter 270 of the Laws of 1885, the city of Albany was added to the exception, and the law was rendered still more complete and extended in some of its provisions. The obvious policy of all of these general laws has been to provide for the creation and organization of a separate and distinct body of officials as a board of health in the several cities and villages referred to in their provisions. That this was the intention of the legislature has been evinced by the

general scope and character of the legislation itself, for in the cities not excepted it has been made the duty of the common council, upon the nomination of the mayor, to appoint the members of the board of health, and in every incorporated village in the State it has been declared by the act of 1885 to be the duty of the trustees once in each year to appoint a board of health for each village. And the village trustees themselves are rendered ineligible to appointment as members of that board, for the persons to be selected are not to be trustees of the village. The exception of villages from the obligation to exercise this authority, extends no farther than to those having existing boards of health. Where such existing boards may be found, the act, it has been declared, shall not be construed to remove them. But it has not, by this restraint of the general direction contained in section 1 of the act of 1885, been declared that the authority of the village trustees as a board of health, was not to be annulled or superseded by the very general direction contained in it. What it has declared is that it shall not be construed to remove any of the existing boards of health, which is language not appropriate where the trustees of the village may themselves have been invested with the powers and authority of a board of health. By construing the act to have been enacted to supersede the authority of the trustees in this respect, they will not be removed from their offices, but certain of their official functions will be terminated, and it is only to the removal of existing boards that the prohibition of the statute has been applied and directed. That this was the intention of the legislature is evinced by the provision contained in the exception, that the successors of the existing boards shall be appointed as that has been provided for by this section. These successors were clearly not intended to be successors in office of the trustees of the village, for the appointments themselves are to be made by that body, and the persons to be appointed successors are to be the successors only of members of existing boards of health. If this language should not be so construed, then no separate or distinct board of health could be appointed or organized in any village whose charter contained the provision which was included in the charter of the village of Edgewater, for the successors in such a case could only be successors in the office of trustee, who *ex-officio* become as such members of the village board of health, and their

successors have been in all cases required by law to be elected or appointed by the other members of the board of trustees. A different construction would perpetuate the authority which it was one of the objects of the act of 1885 to abrogate, of having the trustees themselves and the board of health constituted by precisely the same persons. The further provision upon the same subject, contained in section 2 of the act of 1885, for the filling of vacancies, also fortifies and sustains this construction, for it clearly contemplates that the vacancy is to be filled when it may occur, by a body distinct and different from that of the board of health itself. And it has accordingly provided that if the proper authorities, which, in the cases of villages are the trustees, by inability, neglect or refusal fail to fill a vacancy, it shall be the duty of the county judge of the county, upon being satisfied that such vacancy should be filled, without delay, to appoint in writing a competent person to fill such vacancy for the unexpired term. And that has not been permitted to be done where the vacancy is in the office of a trustee, which, by the statutes of the State, must either be filled by election, or by the appointment by the other members of the board of trustees. What the act of 1885 intended to perpetuate and continue in authority was the several boards of health then organized, and not to continue the authority which might previously have been vested over the same subject in the board of trustees of a village. The boards to be continued have been designated by section 3 of the act of 1885 as boards of health now organized, which phraseology would not be entirely pertinent or applicable to a board of village trustees vested with the powers of a board of health. But what the law seems to have regarded was a distinct and separately organized body from that of the trustees themselves. And it was to the body so organized, that the powers created by the act of 1885, and the preceding laws upon this subject were intended to be given by the legislature.

This act of 1885 has been made a general law of the State, and was probably intended to be construed in view of the preceding general legislation upon the same subject. By that legislation provision had been made for the organization of a board of health by the appointment by the trustees of a village of one or more health commissioners, who, with the president of the board, should constitute the board of health of the village. (2 R. S. [6th ed.], 594,

§ 8.)   And the observance of that authority would secure, where no other or different local provision had been or should be made, the organization of a board of health, as that was contemplated by the last clause of section 1, and by section 3 of the act of 1885.   In all villages to which the act of 1870 applied, boards of health would exist through this mode or manner of their organization.   And they would exist distinct and separately from the board of trustees, and so far would be within the spirit and system of these other general laws.   It is not to be supposed that all the provisions contained in mere local enactments were at the time of the enactment of the law of 1885 in the mind of the legislature.   It was providing regulations for the general health of the State and designed to make uniform provisions upon that subject, beyond the cities specially and expressly excepted.   And in making those provisions it may reasonably be assumed that the other general provisions of law, upon the same subject, were all that were in the contemplation of the legislature.   And to harmonize those provisions with what had been done under the preceding general laws of the State, they were so far restrained in their effect as not to be permitted to remove the existing boards of health, as such boards had in numerous instances come into existence under the authority of the section contained in the Revised Statutes which has already been considered.   It was the purpose of the later act to continue such boards in existence until their successors were required to be appointed, and then to require that to be done by the trustees of the village in the manner mentioned in the act of 1885.   That this act was intended to include and relate to only such boards of health as are distinct and separate from the board of village trustees is further manifested by section 5, directing that all the expenses of the several boards of health should be audited, levied and collected as other village charges are audited, levied, collected and paid, for that has been required to be done by the board of trustees of the village in which the expenses may be incurred. This has generally been provided for as to villages incorporated under the act of 1870 (2 R. S. [6th ed.], 595, § 9), and it has been so also specially provided by the charter of this particular village. (Laws 1870 [vol. 2], 1564, ch. 674, sub. 19.)

Greater care has also been taken to render the act of 1885 gen-

erally applicable than was taken in the enactment of the laws of 1881 and 1882, for they repealed only such acts and parts of acts as were inconsistent with their provisions, while the act of 1885 has been made so much more extended as to repeal even special provisions inconsistent with those contained in it. And the section of the charter of this village declaring its board of trustees to be its board of health is inconsistent with the direction contained in the act of 1885, making it applicable to every incorporated village in this State, and only excepting from that provision villages having existing boards of health, which existing boards of health were manifestly intended to be distinct and separate . boards from the board of trustees of the village.

It is not necessary to consider whether the acts of 1881 and 1882 should have been in like manner construed from the general language employed in them. It is sufficient for the present purposes to determine the construction which should be given to the act of 1885, as that was designed as a general law for the government of the State, subject to the exclusion of certain excepted cities. It is to be inferred from the enactment of this law that the legislature was not satisfied with the laws then existing upon the same subject, and that this law was intended to meet what were regarded as the necessities of the different localities included in it, and to provide a uniform system for the organization of boards of health distinct and separate from that of the trustees of the village, and only to perpetuate and continue organizations previously made consisting of separate boards from the village boards of trustees.

The relator is shown to be a citizen and taxpayer of the village, and entitled, therefore, to claim that the provisions of the act shall be observed and carried into effect by the appointment and organization of a board of health in compliance with its directions. And that he may invoke the exercise of the power of the court to accomplish this end is reasonably well settled by authority. Upon this subject it has already been held that a citizen of the locality to be affected is entitled to apply for a writ of *mandamus* requiring the authority of such a statute to be carried into effect. Upon that subject what has been so considered and held may here be appropriately repeated, and that is, that it is only when the application for the writ is made to secure some personal or private redress, that

the applicant must be shown to be interested in obtaining it before the writ can be directed to issue.     Where the act omitted to be performed affects the public interests generally, and all citizens are equally concerned in securing its performance, and that has been enjoined by a law of the State, a different rule prevails.     There it is sufficient to support the application that the applicant is a citizen and entitled to insist upon the execution of the laws of the State. These laws are made for the promotion of public order and individual security, and accordingly every citizen has a sufficient interest in their execution to entitle him to prosecute an application of this description.     Laws are enacted for the well-being, good order and security of the community and of its constituent members.     Public officers are provided for, elected and appointed to execute their provisions, and where they designedly fail or intentionally omit to do that every citizen has the inherent right to apply to this court and insist upon it that the writ of *mandamus* shall issue in such a form as to secure the observance of that duty.     The authorities in this, and several of the other States, and those also of the Court of King's Bench in England, have gone very far in supporting this proposition.     In fact the utmost limit of judicial interference has been reached for the purpose of sustaining the right of private persons to insist upon the performance of public duties by public officers.     An extreme case was that of *The King* v. *Brown*, a note of which will be found in 3 Term, 574, under the title of *Rex* v. *Smith*, where an application of this nature was sustained against the common councilmen of York, because they had failed to observe the requirement of an act of parliament declaring that corporate officers generally, as a qualification for holding their offices, should receive the sacrament within six months.     The interest of the applicant in the observance of this duty was extremely insignificant, and yet the application was sustained because it was made to enforce the observance of an act of parliament which interested all the corporations in the kingdom.     This authority, as well as others maintaining the same general conclusion, were fully approved in the case of *People ex rel. Case* v. *Collins* (19 Wend., 56).     In the case of *People* v. *Halsey* (37 N. Y., 344), it was also held to be a matter of but slight importance whom the applicant or relator should be so long as he does not officiously intermeddle in a matter with which he has

no concern. The rule, it was said, that a relator in a writ of *mandamus* must show an individual interest in the thing asked, must be taken to apply to cases where an individual interest is alone involved, and not to cases where the interest is common to the whole community. (Id., 348; High on Extraordinary Remedies, § 431, and cases cited in note.) The rule is different in some of the States, but here it has become fixed and established, allowing every citizen the right to compel public officers, whose duty it has been made to do so, to execute the laws of the State, enacted for the benefit of the community. And where the government is solely one of laws, as that of the State most clearly is, the rule is one of a salutary and beneficial character. (*People* v. *Common Council of Buffalo*, not yet reported.)

Judgment should, therefore, be ordered in favor of the relator, directing a writ of peremptory *mandamus* to be issued requiring the board of trustees of this village forthwith to assemble and appoint a board of health in the manner in which that has been provided for by section 1 of chapter 270 of the Laws of 1885. And under the circumstances this direction should be without costs.

DAVIS, P. J., and BRADY, J., concurred.

Judgment ordered for the relator on the case submitted and *mandamus* granted, without costs.